UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

Joseph Cooper,

      Plaintiff,

      v.                                    09-3308

Ofc. Charles Redpath, et al.,

      Defendants.

## Memorandum Opinion and Order

Before the court are the Defendants Officer Charles Redpath, Officer Scott Ligon and Officer B. Harhausen's summary judgment motion [29] and the Plaintiff, Joseph Cooper's response [32].

## Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be

entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

Plaintiff, Joseph Cooper alleges he sustained injuries as a result of his arrest pursuant to probable cause on March 10, 2009. Cooper alleges that Officers Redpath and Harhausen used excessive force thereby violating his Fourth Amendment rights against unreasonable seizures. Specifically, Cooper alleges that Officers Redpath and Harhausen picked him up from the floor by his handcuffed wrists thereby dislocating his shoulders. Cooper alleges that Officers Redpath and Harhausen used Cooper's "head and body as a battering ram to knock down furniture creating the illusion of a big crime scene." Cooper alleges that he was carried into the hallway where Officer Harhausen held him while Officer Redpath forced Cooper's face onto the stucco rock hallway wall and dragged his face several feet down the wall tearing his forehead open. Cooper alleges he was dragged twenty or thirty yards by his arms and thrown down a flight of stairs which resulted in two broken toes. Cooper alleges he was thrown into the back of a squad car on his knees. (Amended Complaint, page 6 [21]). Cooper alleges Officer Redpath showed deliberate indifference to Cooper's medical needs also in violation of his Fourth Amendment rights. Cooper alleges Officer Harhausen failed to intervene on Cooper's behalf to prevent Officer Redpath from violating his Fourth Amendment rights to receive adequate medical treatment. Cooper alleges that Officer Ligon conspired to cover up Officer Redpath and Officer Harhausen's alleged excessive use of force by making false statements in a police report.

Undisputed Material Facts[1]

1. Cooper was arrested on March 10, 2009, at or near Room 212 of the Quest Inn located at 3125 Widetrack Drive, Springfield, Illinois by Ligon. The police were called to that location because of a disturbance. (Plaintiff's Amended Complaint, Document, p. 5 [21]).
2. Patel, manager of the Quest Inn, was working near Room 212, when he heard screaming coming from within and called 9-1-1. (Affidavit of Patel).
2  Cooper alleges that Officer Redpath told the Memorial Medical Center ER staff to only treat the injuries pertaining to Cooper's charges. (Amended Complaint, p. 6 [21].
3. Upon arrival at 3125 Widetrack Drive, Ligon came into contact with Walker who told Ligon that he had heard someone call for help. (Affidavit of Walker).
4. Prior to knocking on the door of Room 212, Ligon heard a loud argument occurring inside. When Ligon knocked, a female voice started screaming "help" several times. (Affidavit of Ligon).
5. Ligon immediately kicked the door and on the second kick it opened. When he walked into the room, Ligon saw a female on the bed who was bleeding profusely from her mouth and had an obvious injury to her lip. (Affidavit of Ligon).
6. Ligon later learned this female was Nina Brantley and that, in the course of a physical altercation with Cooper, Brantley had suffered a broken jaw, several knocked out and broken teeth, knife wounds to her hand and bite wounds on her face and neck. (Affidavit of Ligon).
7. The bed sheets were soaked in blood and blood was present on the surfaces of numerous items in the room. (Affidavit of Ligon; Affidavit of Redpath; Affidavit of Harhausen)
8. Cooper, with his back to Ligon, was also sitting on the bed next to a bloody knife. Ligon pulled out his weapon and ordered Cooper to show his hands and get on the floor. (Affidavit of Ligon).
9. Ligon repeated the order to get on the floor three times. Cooper did not move. (Affidavit of Ligon).
10. Seeing Cooper did not have anything in his hands and that he was facing away, Ligon holstered his weapon and grabbed Cooper's left arm at which time Cooper started to stand up. (Affidavit of Ligon).
11. Cooper was covered in blood making it difficult to get a grip on him. (Affidavit of Ligon).

---

[1]Exhibits can be found attached to Defendants' summary judgment motion. Plaintiff has not disputed any of the Defendants' Undisputed Material Facts. Plaintiff did not set forth specific facts showing that there is a genuine issue of material fact for trial; he did not submit affidavits or other documentary evidence contracting the defendants' assertions. Although the clerk of the court mailed a copy [30] of Local Rule 7.1, Plaintiff did not follow the guidelines set out in that rule when responding to Defendants' motion. It appears that he merely filed copy of his Reply to Request For Admissions, and entitled it "Response to Defendants' Motion for Summary Judgment."

12. Ligon ordered Cooper to the ground and Cooper continued to try to stand up. (Affidavit of Ligon).
13. Cooper resisted efforts to be taken to the ground. (Affidavit of Walker).
14. At one point in the struggle to get him down, Cooper was thrown into a wooden desk on the south-side wall. Cooper's head struck the wall. (Affidavit of Ligon).
15. Ligon is not aware whether the cut to Cooper's head occurred at this time or not. Ligon did not observe a wound at this time, however. (Affidavit of Ligon).
16. Cooper continued attempting to pull away from Ligon. Ligon continued to order him to stop resisting. (Affidavit of Patel; Affidavit of Walker).
17. Ligon eventually got Cooper to the ground and ordered him to put his hands behind his back. Cooper continued to resist and attempt to pull away. (Affidavit of Ligon).
18. Ligon noticed a bladed weapon on the floor next to Cooper's head. (Affidavit of Ligon).
19. Cooper tried to roll over and Ligon struck him three (3) times with his right elbow into Cooper's back. As a result, Cooper flattened face down on the floor and Ligon was able to put one handcuff on Cooper's left hand. (Affidavit of Ligon).
20. Ligon moved so his knee was on Cooper's shoulder, pinning him to the ground. (Affidavit of Ligon).
21. Patel came into the room and told Cooper to cooperate. (Affidavit of Patel).
22. Ligon handcuffed Cooper's right hand while Cooper spoke with the manager. (Affidavit of Patel).
23. Cooper admits that he was handcuffed by Ligon. (Plaintiff's Amended Complaint [21], p. 5).
24. At this point, other officers arrived to assist Ligon. (Affidavit of Patel; Affidavit of Walker).
25. When Ligon attempted to pull Cooper to his feet, Cooper tensed his arms and attempted to pull Ligon back to the ground. (Affidavit of Ligon).
26. Someone moved Cooper's legs to the side so he could get to his knees and eventually stand up. (Affidavit of Harhausen).
27. Cooper was then assisted to his feet by Redpath who placed a hand on Cooper's left shoulder as Cooper got to his knees and eventually stood up. (Affidavit of Redpath).
28. Redpath and Harhausen escorted Cooper out of Room 212 with assistance from Ligon. (Affidavit of Redpath; Affidavit of Harhausen; Affidavit of Ligon).
29. Redpath had his right hand on Cooper's left arm as Cooper was escorted out. (Affidavit of Redpath).
30. When Redpath and Harhausen began to escort Cooper out of the room, Cooper kept jerking away from the officers to the right. (Affidavit of Redpath).
31. At one point while Redpath, Harhausen and Cooper were still inside Room 212, Cooper suddenly jerked to his right and caused Redpath and Cooper to fall off-balance to the right. As Redpath fell, Cooper fell with him and Cooper hit an interior wall of the room with his head. (Affidavit of Redpath; Affidavit of Harhausen).
32. There was a dent in the drywall where Cooper's head struck it. Neither Redpath nor Harhausen are certain that the scrape to Cooper's head occurred at this time or not.

    Neither Redpath nor Harhausen noticed a wound on Cooper's head at this time.

4

(Affidavit of Redpath; Affidavit of Harhausen).
33. While being escorted down the hall, Cooper continued to resist by kicking and struggling against the officers escorting him. (Affidavit of Patel; Affidavit of Walker; Affidavit of Lewis).
34. While being escorted by Officers Redpath and Harhausen, the Plaintiff did not come into contact with the hallway walls of the Quest Inn. (Affidavit of Patel; Affidavit of Walker; Affidavit of Lewis).
35. Cooper admits that he was taken to Memorial Medical Center by Redpath and Harhausen. (Plaintiff's Amended Complaint, p. 6 [21].
36. At Memorial Medical Center, Cooper admits that he was seen by two medical interns and a doctor. (Plaintiff's Amended Complaint, pp 6 and 7 [21]).
37. At Memorial Medical Center, Cooper admits that he did receive some treatment for his injuries, including a cat-scan for his head wound. (Plaintiff's Amended Complaint pp. 6 and 7 [21]).
38. At Memorial Medical Center, Dr. Miller who treated Cooper advised Harhausen that Cooper's injuries were superficial. (Affidavit of Harhausen).
39. Cooper admits that he was taken to the Sangamon County Jail Medical Facility on March 11, 2009. (Plaintiff's Amended Complaint, p. 7 [21].
40. Cooper admits that while at the Sangamon County Jail Medical Facility he was seen by a staff doctor who said she could not state that his injuries were done by the police. (Plaintiff's Amended Complaint, p. 8 [21]).
41. Cooper pled guilty to a charge of Aggravated Battery as a result of the incident that formed the probable cause for the arrest of Plaintiff from which these allegations arise. (Attachment A to Affidavit of Ligon).

Discussion and Conclusion

The summary judgment standard requires Plaintiff to present affirmative evidence to support each and every element of his claims against Defendants Redpath, Ligon and Harhausen. Plaintiff has not done so.

Excessive Force

It is well established that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). The question of whether a police officer has used excessive force in the course of an arrest is analyzed under the Fourth Amendment's "reasonableness" standard. *Id.,* 490 U.S. at 395, 109 S. Ct. at 1871. Because application of the reasonableness standard "is not capable of precise definition or mechanical application," careful attention must be paid to the facts and circumstances of each individual case. *Id.,* 490 U.S. at 396, 109 S.Ct. at 1872, *quoting Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884 (1979). Such factors include the severity of the crime at issue, whether the subject poses an

5

immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. at 1872. Further, the "Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in ordering search and seizure cases. The only test is whether what the police officers actually did was reasonable." *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994).

In the instant case, the force used to escort the Plaintiff from the crime scene in a hotel room to a waiting squad car was objectively reasonable. Officer Ligon's affidavit established that during the struggle with Plaintiff, and as a result of Plaintiff's own active resistance, Plaintiff's head struck the south-side wall of the room. The Plaintiff's allegations are that excessive force was used upon him after he was already restrained in handcuffs and at a point in time when Officer Ligon and at least two civilian witnesses were present at the scene to observe. The affidavits of those two civilians, Mukesh Patel and Charles Walker, show that Plaintiff was actively resisting Officer Ligon during the handcuffing procedure. Those same affidavits, as well as the affidavit of Trooper Jason Lewis, show that Plaintiff actively resisted Officers Redpath and Harhausen while they escorted him away. Patel, Walker and Lewis further establish that they had an opportunity to observe Plaintiff being escorted out of the hotel room and that they did not witness the actions alleged by Plaintiff. Trooper Lewis' affidavit establishes that Officers Redpath and Harhausen used a degree of force appropriate to the amount of resistance they received from Plaintiff. He resisted being moved and was controlled through the use of the officers' hands on his upper arms. Although there was an injury to Plaintiff's forehead, he has not produced any evidence to suggest that Officers Redpath or Harhausen intentionally inflicted injury upon him nor that the sequence of events that brought about the injury to Plaintiff's head did not occur as a direct result of Plaintiff's own conduct in actively resisting. As Plaintiff has not produce evidence to support his allegations, Defendants must be granted summary judgment as a matter of law.


Plaintiff's Medical Needs.

A denial of an arrestee's medical needs violates the Fourth and is subject to the same objectively unreasonable standard that is used in excessive force cases. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir.2006). The Seventh Circuit cases thus establish that the protections of the Fourth Amendment apply at arrest and through the Gerstein probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). Four factors inform the court's determination of whether an officer's response to Cooper's medical needs was

6

objectively unreasonable. *Id.* The four factors are (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Id.* In this case, upon observing the Plaintiff to be injured, the officers, without delay, transported Plaintiff to the hospital to be treated. Plaintiff's allegations suggest Officer Redpath tried to limit the scope of medical care Plaintiff received and that Officer Harhausen stood by and allowed that to happen. However, it is the Plaintiff himself who admits that it was these same officers who provided him with the opportunity to receive medical care by transporting him to Memorial Medical Center on their own initiative. Common sense suggests that police officers who are intent upon denying an arrestee medical treatment would not transport him to a medical facility where he subsequently received such care. The Plaintiff does not corroborate his assertion with any evidence to the contrary, thus Defendants are entitled to summary judgment as a matter of law.

Failure to Protect.

Because the allegation that Officer Redpath denied Plaintiff adequate medical attention fails, so too must Plaintiff's allegation that Officer Harhausen stood by and allowed the doctors and interns at Memorial Medical Center to only pursue the course of treatment dictated by Officer Redpath. The Defendants are entitled to summary judgment as a matter of law.

Conspiracy Claim

The plaintiff has presented no evidence of conspiracy to deprive his constitutional rights. Civil conspiracy is a combination of two or more persons for the purpose of accomplishing, by some concerted action, either an unlawful or a lawful purpose by unlawful means. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62-63, 206 Ill. Dec. 636, 642, 745 N.E.2d 888, 894 (1994). To establish civil conspiracy under § 1983, the Plaintiff must show that the Defendants agreed to deprive him of his constitutional rights. *See Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). A conspiracy claim under § 1983 alleges that the defendants reached an understanding to deprive the plaintiff of constitutional rights. *Brokaw*, 235 F.3d 1000 (7th Cir. 2000); *Amundsen*, 218 F.3d 712 (7th Cir. 2000). Conspiracy is an intentional tort and requires proof that a defendant knowingly and voluntarily participated in a common scheme to commit an unlawful or a lawful act in an unlawful manner. *Id.* Conspiracy is not an independent basis for liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). If the Plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails. *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

Plaintiff's allegation that Ligon participated in a conspiracy to violate his constitutional rights fails. In order for the Plaintiff to succeed on this claim, he must first prove a violation of his constitutional rights. The undisputed facts in this case establish that none of the Defendants violated the constitutional rights of the Plaintiff as alleged. In fact, there is no evidence in this case to suggest that any of the Defendants were in agreement to violate the Plaintiffs' rights.

7

There was no agreement and there were no actions taken to fulfill any alleged agreement and for that reason Defendants are entitled to summary judgment as a matter of law.

It is therefore ordered:

1. Pursuant to Fed. R. Civ. Pro. Rule 56, Defendants' summary judgment motion [29] is granted. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. Further, Defendants are awarded costs. This case is terminated in its entirety.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 30th day of August 2011.

                                      **\s\Harold A. Baker**
                                      Harold A. Baker
                                  United States District Judge